UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 08-522-JBC

PHILIP NEWTON, PLAINTIFF,

V. MEMORANDUM OPINION AND ORDER

NORTH AMERICAN SPECIALTY
INSURANCE COMPANY, DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon the motion of the defendant, North American Specialty Insurance Company, for summary judgment. R. 41. For the following reasons, the motion will be granted.

I.  Background

This suit involves a life insurance contract for a horse named MARCO POLO. The contract was purchased by Philip Newton, the horse's owner, from North American Specialty Insurance Company ("NAS"). The policy provided a benefit of $400,000 in the event of a loss under the terms of the contract. In 2007, MARCO POLO began exhibiting symptoms of ataxia, a neurological disorder that affects balance and stability. A test performed by Newton's veterinarians confirmed the presence of EPM, an organism that can cause ataxia. There was, however, no definitive evidence that EPM was the cause of MARCO POLO's ataxia.

After the initial treatment was completed, MARCO POLO's condition

1

deteriorated. Newton then asked for confirmation from NAS that it would provide coverage should he choose to euthanize MARCO POLO. After an examination by NAS's veterinarian, Newton was informed that MARCO POLO's condition was not covered by the contract.

When the first line of treatment failed to fix MARCO POLO's ataxia, he was given a different treatment known as Navigator. NAS claims that this treatment was chosen by Newton's veterinarian, while Newton asserts the opposite. The Navigator treatment likewise failed. Even so, no veterinarian ever found MARCO POLO to exhibit the level of ataxia required for coverage under the contract. Throughout this period, NAS told Newton that the insurance policy would not cover MARCO POLO if Newton chose to euthanize him. Nonetheless, MARCO POLO was euthanized on November 7, 2008. Newton subsequently presented a claim to NAS, which was denied.

## II. Legal Analysis

Pending before this court is NAS's motion for summary judgment. Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *Schrieber v. Moe*, 596 F.3d 323, 329 (6th Cir. 2010).

### A. Estoppel

Newton asserts two separate grounds for estopping NAS from denying

coverage. First, in his complaint, Newton argues that NAS should be estopped because it induced Newton to use the Navigator treatment on MARCO POLO. According to Newton, he approved this medical treatment "with the expectation that the thoroughbred either would recover from his illness or, if the treatment was unsuccessful, would be humanely destroyed and Newton would recover the death benefit." R.1 ¶ 36. Because the treatment was a failure, *id.* at ¶ 35, Newton argues that NAS must pay the death benefit.

In his response to NAS's motion for summary judgment, Newton now asserts a new basis for estopping NAS.[1] According to Newton, NAS required the use of the Navigator treatment, "knowing that it was probable that MARCO POLO would improve by at least one grade" on the ataxia scale. R. 44 at 10. Hence, the recommendation that he use Navigator "placed [him] in an impossible situation: either follow [NAS's] prescribed treatment and thus improve the horse just enough that he does not qualify for coverage or decline [NAS's] recommendation and have coverage voided." *Id.* For the reasons stated below, both arguments for estopping NAS fail to demonstrate a genuine issue of material fact.

Newton's original basis for estoppel fails outright. According to Newton, he undertook the Navigator treatment at the request of NAS's agent, Dr. Celia Marr. Newton argues that if he had not followed the recommendations of Dr. Marr, NAS

---

[1] It is noteworthy that Newton's two bases for estopping NAS are in conflict. Under the first, Newton asserts that the Navigator treatment "yielded no improvement in MARCO POLO's condition." R.1 ¶ 35. *See also* R.44 at 6, 9 (noting the "failure of all treatment options"). Under the second, Newton claims that the Navigator treatment actually improved MARCO POLO a full grade.

would have denied coverage. Assuming these allegations are true, Newton still cannot make out a claim of estoppel.

Although MARCO POLO was undeniably sick, not all declinations in MARCO POLO's health were covered by the contract. The insurance policy limited coverage to ataxia of grades 3 or higher. Hence, the contract plainly contemplated that a horse could be afflicted with ataxia (graded less than 3) and yet not be covered. The veterinarian's recommendation to treat such a horse is not a basis for estoppel. Newton is essentially claiming that all attempts to treat horses with ataxia below grade 3 automatically sweep them within the policy if they fail to improve. There is no basis for this assertion.

Both parties agree that, given his level of ataxia, MARCO POLO was unable to race. Nonetheless, his condition was not sufficiently severe to qualify under the contract. This situation is expressly covered under the "Loss of Use" provision. The contract noted that there could be situations where MARCO POLO could be rendered unfit to race, but nonetheless not be covered. Newton's subjective belief, that if the Navigator treatment failed to fully restore the horse's health then he would be entitled to coverage, is irrelevant. Newton has no evidence that such statements were made, nor does the contract itself warrant such a belief.

Even if Newton is correct that NAS would have denied coverage if he failed to provide the Navigator treatment, his argument is without merit. Under the contract, he was obligated to (1) provide proper care, (2) employ a veterinarian to

treat the horse in case of injury, sickness, or disease, and (3) allow the horse to be removed by NAS to be treated if necessary. Thus, by the terms of the contract, he was indeed obligated to provide appropriate care when MARCO POLO got sick. Nowhere does the contract suggest that the horse would be covered if such care failed to restore him to complete health.

Newton has likewise failed to demonstrate any material facts to support his more recent estoppel claim.[2] According to this claim, NAS knew that the Navigator treatment would improve the horse by at least one grade, required Newton to provide the treatment, and then denied coverage when the horse failed to meet the grade 3 ataxia requirement.

There is no factual basis for this allegation nor is it a basis for estopping NAS. Newton's only evidence to support this claim is the recently filed affidavit of veterinarian Mark Hillyer. However, this court struck the relevant portions of the affidavit because they directly contradicted Hillyer's deposition testimony. R. 53. In any case, Newton would fail to survive summary judgment nonetheless. Throughout his filings, Newton asserts that the treatments given to MARCO POLO failed to improve his condition. R. 1 at 1; R. 44 at 1, 6, 9. The conclusory affidavit of Hillyer is insufficient to create a genuine issue of material fact.

---

[2] As a preliminary matter, by asserting a new basis for estopping NAS, Newton is constructively amending his complaint in an attempt to defeat summary judgment. "Plaintiff cannot change its theory of a case (in an effort to avoid summary judgment) *after* Defendant moves for summary judgment." *Vaughn v. City of Lebanon*, 18 Fed. Appx. 252, 272 (6th Cir. 2001) (*quoting Welch v. Delta Airlines, Inc.,* 978 F. Supp. 1133, 1138 (N.D. Ga. 1997)) (emphasis in original). *See also Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989).

### B. Breach of Contract

Newton also asserts a cause of action for breach of contract. However, Newton has failed to demonstrate a genuine issue of material fact

#### i.

The contract contemplates coverage in two relevant circumstances. First, it provides coverage specifically for ataxic horses. This provision contains criteria that a horse with ataxia must meet in order to qualify for coverage. Second, the contract provides coverage generally whenever a horse is "humanely destroyed." There is no limit on the causes that can justify humane destruction.

Newton cannot utilize the general humane destruction provision of the insurance contract. Because the policy contains specific guidelines for ataxic horses, these control. It is a general principle of contract construction that a specific provision controls over a general provision. *See, e.g.*, Restatement (Second) of Contracts § 203 (1981); 11 *Williston on Contracts* § 32:10 (4th ed.). This rule applies with equal force to insurance contracts. *See State Auto. Mut. Ins. Co. v. Ellis*, 700 S.W. 2d 801, 803 (Ky. 1985) (*citing* 2 *Couch on Insurance* 2d § 15:71 (Rev. Ed. 1984)).

The ataxia or "Wobbler Syndrome" section of the contract is more specific than the general humane destruction provision. The ataxia provision includes specific guidelines for grading a horse's level of ataxia and then limits coverage to a certain class of ataxic horses (namely, horses with ataxia of grade 3 or higher in all

limbs). In contrast, the humane destruction provision covers horses suffering from any injury or painful disease of sufficient severity. It does not delineate specific types of injury or disease. This provision is more general than the ataxia provision, which is limited to a narrow class of horses, of which MARCO POLO was one.

If ataxic horses were encompassed within the humane destruction provision, the ataxia provision would be rendered superfluous. As Newton's expert testified, MARCO POLO exhibited ataxia between grades 2 and 2.5. MARCO POLO was never documented as having ataxia of grade 3 or higher in all limbs. Newton nonetheless argues that his condition was covered under the humane destruction provision by virtue of the danger he posed to himself and others. However, if ataxia of grade 2-2.5 qualified for humane destruction, a horse with ataxia of grade 3 or higher would always qualify, and there would be no need for the ataxia provision at all. Such a reading would violate the bedrock principle that courts are to interpret contracts to give meaning to every term. 11 *Williston on Contracts* § 32:5 (4th ed.).

Because the specific ataxia provision controls, Newton cannot recover under the contract. The relevant portion of this provision requires a diagnosis of ataxia of at least grade 3 in both front and hind limbs to qualify for coverage. MARCO POLO was never diagnosed with grade 3 ataxia in both its front and hind limbs. *See* R. 41, Ex. 16, at 6, 8-10. Consequently, Newton cannot show a genuine issue of material fact on this issue, and summary judgment is appropriate.

**ii.**

Assuming, for the sake of argument, that ataxic horses were encompassed within the humane destruction provision, Newton would lose nonetheless. This portion of the contract is clear. It requires a veterinary certification prior to destruction. By euthanizing the horse without certification, Newton disqualified MARCO POLO from the humane destruction provision.

The issue is one of contract construction. The general rule is that ambiguities in insurance contracts should be construed in favor of the insured. *Davis v. American States Ins. Co.,* 562 S.W. 2d 653, 655 (Ky. App. 1977). If a contract has two plausible constructions, the one most favorable to the insured must be adopted. *Wolford v. Wolford,* 662 S.W. 2d 835, 838 (Ky. 1984). Therefore, if Newton is correct that there are two plausible interpretations, the court must deny summary judgment. "However, where there is no ambiguity, the rule of liberal construction in favor of the insured is inapplicable…courts cannot enlarge coverage or make new contracts under the guise of construction, but must determine the parties' responsibilities according to the contract terms." *Kentucky Ass'n of Counties v. McClendon*, 157 S.W.3d 626, 633 (Ky. 2005). For the reasons discussed below, there is only one reasonable interpretation of the contractual language.

The section at issue provides as follows:

"2. Humane Destruction means the intentional slaughter of a horse:

8

> a. when the horse suffers an injury or is afflicted with an excessively painful disease and a veterinarian appointed by our Managing Underwriter certifies in writing that the horse is incurable and in constant pain, or presents a hazard to itself or its handlers."

R. 41 Ex. 2.

Newton argues that there are two reasonable meanings of the contract language. In addition to the reading offered by NAS, he argues that the contract could be read to provide coverage in two alternative instances:

> "The horse suffers an injury or becomes afflicted with an excessively painful disease **AND**
>> A. One of NAS's veterinarians certifies that the horse is incurable and in constant pain; **OR**
>>
>> B. The horse presents a hazard to itself or its handlers."

R. 44 at 12.

According to this interpretation, a veterinary certification is required if the horse is incurable and in constant pain, but not if the horse presents a hazard to itself or its handlers. Newton supports his position by emphasizing the comma placed after the word "pain." According to Newton, the comma "breaks the requirements for humane destruction when a horse suffers an injury or becomes inflicted with an excessively painful disease into two alternate parts."

Newton's alternative interpretation of the contract cannot withstand

9

scrutiny. As a preliminary matter, Newton's interpretation first requires that the horse "suffer[] an injury or become[] afflicted with an excessively painful disease." Given that his veterinarian conceded that ataxia is not a painful condition, Newton relies primarily upon the "injury" prong. The sole evidence offered by Newton that MARCO POLO might have suffered an injury is the testimony of Dr. Marr that it was possible that injury could have caused his ataxia. Although this is counterbalanced by statements of Newton, Dr. Hillyer, and MARCO POLO's trainer, Sir Michael Stoute, the court will assume Newton has met the injury prong for the sake of this summary judgment motion.

Newton nonetheless loses because the contract unambiguously requires a certification from a veterinarian appointed by the Managing Underwriter that the horse presents a hazard to itself or its handlers. This certification requirement is present throughout the contract. R. 41, Ex. 2. Its inclusion in numerous other sections belies the likelihood that the parties intended for it not to apply to the provision at issue.

In addition, the reading offered by Newton makes no grammatical sense. Newton would have the contract read: "Humane Destruction means the intentional slaughter of a horse…when the horse suffers from an injury or is afflicted with an excessively painful disease and…or the horse presents a hazard to itself or its handlers." This incongruity results from Newton's decision to selectively include only a portion of the clause preceding the "presents a hazard" language. Indeed,

given the comma placement emphasized by Newton, it would make more sense to read this latter clause in total isolation from the preceding clause, such that there would be no requirement for injury or disease whatsoever. Such an interpretation, however, would be specious.

Finally, as NAS notes, Newton's interpretation of the contract would yield absurd consequences. It would allow euthanasia whenever a horse presents a hazard to itself or its handlers regardless of whether it is in pain, the condition is readily curable, or a veterinarian is involved. NAS points out that this interpretation would cover a horse that is euthanized by the owner immediately after the horse begins to violently kick due to an intestinal problem. It would make no difference that the problem was easily curable or that a veterinarian was never involved in the process. Newton provides no evidence that such a result was contemplated. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 545 (6th Cir. 2007) ("[C]ontracts must be construed consistent with common sense and in a manner that avoids absurd results.") (citations omitted); *Greasy Creek Coal & Land Co. v. Greasy Creek Coal Co.*, 7 S.W.2d 853, 855 (Ky. App. Ct. 1928).[3]

---

[3]Even if the court were to indulge Newton's contention that the contract language was ambiguous, Newton would lose nonetheless. Newton's actions demonstrate his awareness of the certification requirement. Newton sought NAS's certification that MARCO POLO came within the criteria for humane destruction by virtue of the danger he posed to himself and others three times. R. 44 at 5-7. It is a basic tenet of construction that "[w]hen parties have made an ambiguous contract, and have acted under it, and their joint actions show their understanding of it, courts and juries will follow the construction thus indicated." *Henderson Bridge Co. v. McGrath*, 134 U.S. 260 (1890). *See also Burchett v. Jones*, 291 S.W.2d 32, 34 (Ky. Ct. App. 1956).

### III. Conclusion

Accordingly, **IT IS ORDERED** that North American Specialty Insurance Company's motion for summary judgment (R. 41) is **GRANTED**.

Signed on September 23, 2010

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY